**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **AMANDA A., ET AL.** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **THE COATESVILLE AREA SCHOOL DISTRICT** | : | **NO. 04-4184** |

**MEMORANDUM**

**Padova, J.** **February 23, 2005**

This action has been brought on behalf of Amanda A. ("Amanda"), a student with disabilities, by her parents, James A. and Barbara A., against the Coatesville Area School District (the "School District"). Plaintiffs seek compensatory education for the failure of the School District to provide Amanda with a free appropriate public education ("FAPE") pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400, *et seq.*, and Section 504 of the Rehabilitation Act of 1973. Plaintiffs have appealed the decision of Commonwealth of Pennsylvania Special Education Due Process Appeals Review Panel ("Appeals Panel") which awarded compensatory education to Amanda, but restricted its award, pursuant to Montour Area Sch. Dist. v. S.T. and His Parents, 805 A.2d 29 (Pa. Commw. Ct. 2002), to the time period beginning one year prior to the date on which Amanda's parents requested a due process hearing. Before the Court are the parties' cross-motions for summary judgment limited to a single issue of law: whether the "statute of limitations" on awards of

compensatory education announced in Montour[1], should be applied to limit the award of compensatory education to Amanda. For the reasons which follow, Plaintiffs' Motion is granted and Defendant's Motion is denied.

## I. BACKGROUND

Amanda's parents first became concerned about her educational progress when she was in first grade (during the 1998-99 school year). (In re the Educational Placement of Amanda A., Appeals Panel Opinion No. 1499, July 20, 2004, "Opinion No. 1499," at 1.) They discussed their concerns with her teachers and hired reading specialists to tutor her during the first and second grade school years and throughout the summers between school years. (Id.) The School District provided some additional instruction to Amanda. Amanda received Title I reading instruction, provided by the School District, for three-fourths of her second grade year and she was provided with summer school instruction by the School District in reading and language arts during the summer following second grade. (Id.)

During Amanda's first year in third grade (2000-01), she was referred to an Instructional Support Team ("IST") which recommended

---

[1]Although the Montour court referred to a "statute of limitations", see Montour, 805 A.2d at 40, Defendant has conceded that there is no applicable statute of limitations and that the issue in this proceeding is whether an equitable limitations period should be applied to restrict any award of compensatory education to Amanda. (Def.'s Reply at 2 n.1.)

that her parents continue to pay for after school tutoring and that she receive continued Title I reading services and an adaptive mathematics program from the School District. (Id.) In February 2001, after Amanda's scores on the *Terra Nova* tests showed that she was in the third percentile of her local peers in reading and seventh percentile in language, her parents asked the School District to test Amanda to uncover any barriers to learning. (Id.) The school psychologist evaluated Amanda and a Comprehensive Evaluation Report ("CER") was issued. (Id.) A Multi Disciplinary Team ("MDT") determined that Amanda was "making grade appropriate progress and did not require specially designed instruction." (Id.) An individualized education program ("IEP") team then met and agreed with this conclusion, even though Amanda's final report card for the 2000-01 year indicated that "she had not performed at grade level in Language Arts or in strategies to decode words, understanding what she had read, summarizing, or using reading vocabulary." (Id.) Amanda's parents did not agree with the MDT's conclusion and returned the Notice of Recommended Educational Placement ("NOREP") a year later with a request for a pre-hearing conference, mediation or a due process hearing. At the end of Amanda's first year in third grade, her parents employed a tutor for the summer of 2001 and had Amanda retained in third grade against the advice of the School District. (Id.)

During Amanda's second year in third grade (2001-02), her

parents obtained an Independent Educational Evaluation ("IEE") of Amanda at A.I. DuPont Hospital for Children. (Id.) The IEE concluded that Amanda had Attention Deficit Hyperactivity Disorder ("ADHD"), a reading disorder, and a disorder in written expression. (Id. at 2.) Amanda's physician prescribed medication for her ADHD and her parents met with School District officials to discuss the IEE. (Id.) The School District rejected the conclusions of the IEE. (Id.) Amanda's parents did not request a due process hearing at this time because they hoped to resolve her problems by working with the School District. (Amanda [A.] v. Coatsville Area School District, Decision, Due Process Hearing, June 4, 2004, the "Due Process Decision," at 19-20.)

During Amanda's fourth grade year (2002-03), the School District evaluated Amanda's ability and skills in speech and language and determined that she did not have a language processing impairment that would affect her communication abilities. (Id.) Her parents requested another evaluation of her current level of functioning in March 2003. (Opinion No. 1499 at 2.) Amanda continued to read below grade level in fifth grade (2003-04), even though she continued to receive Title I reading support. (Id.) Amanda's parents requested a due process hearing on December 23, 2003 and obtained a second IEE in January 2004. (Id.) The psychologist who conducted the second IEE concluded that Amanda had ADHD, a reading disorder and a learning disorder not otherwise

specified. (Id.)

A due process hearing was held on three sessions between March 17, 2004 and April 27, 2004. (Id.) Amanda's parents sought an IEP for Amanda, reimbursement for tutoring, reimbursement for the IEEs, and compensatory education. (Id.) The Hearing Officer found that Amanda had ADHD and a specific learning disability in reading. (Due Process Decision at 15.) The Hearing Officer ordered the School District to convene a team to prepare an IEP for a student with ADHD and a reading disorder, awarded Amanda 36 hours of compensatory education, and ordered the School District to pay her parents fair compensation for both of the IEEs. (Id. at 19-20.) The Hearing Officer did not apply a limitations period to the award of compensatory education, but awarded one hour of compensatory education per week for 72 weeks and reduced the award because of equitable considerations. (Id.) Both the School District and Amanda's parents filed timely exceptions to the Hearing Officer's decision. Amanda's parents argued that the Hearing Officer's award of one hour of compensatory education per week, and reduction of that award, was in error and that she was entitled to 3240 hours of compensatory education. (Opinion No. 1499 at 2.) The School District argued that the award of compensatory education was unwarranted and, in any event, ignored the Montour "statute of limitation." (Id.)

The Appeals Panel found that the Hearing Officer had correctly

found that Amanda requires special education and that she is entitled to compensatory education. (Id. at 4.) The Appeals Panel also found that, because of the pervasiveness of Amanda's disability, she should have been receiving special education for the entire school day. (Id.) However, the Appeals Panel determined that it had to apply the one year "statute of limitations" on awards of compensatory education announced in Montour, although it believed Montour to be wrongly decided. The Appeals Panel stated as follows:

> In M.C. v. Central Regional School District, the U.S. Court of Appeals for the [T]hird [C]ircuit ruled that the period of compensatory education is equal to the period of deprivation, excluding the time reasonably required for the district to act accordingly. In Montour School District v. S.T., the Pennsylvania Court set forth a statute of limitations for compensatory education. Specifically, parents must request a due process hearing within one year of the date upon which the parents accept an IEP. Subsequently, U.S. courts have specifically rejected the statute of limitations on compensatory education imposed by Montour.
>
> This panel is governed by Pennsylvania law. Thus, even though Montour misapplies the Bernardsville standard, we are bound by it. Unfortunately, the current state of affairs leads to venue shopping: districts seeking to restrict compensatory education to one year will appeal decisions of appeals panels to Commonwealth courts, and parents seeking to expand compensatory education beyond one year will appeal decisions of appeals panels to federal courts.
>
> In the present case, the parents specifically rejected the last IEP on December

> 23, 2003 and requested a due process hearing at that time. Without mitigating circumstances, Amanda can seek compensatory education from December 23, 2002 under Montour.

(Opinion No. 1499 at 2-3) (footnotes omitted) (emphasis in original) (citing M.C. v. Cent. Reg'l Sch. Dist., 81 F.3d 389 (3d Cir. 1996), Montour Area Sch. Dist. v. S.T. and His Parents, 805 A.2d 29 (Pa. Commw. Ct. 2002), and Bernardsville Bd. of Educ. v. J.H., 42 F.3d 149 (3d Cir. 1994)). Consequently, the Appeals Panel determined that Amanda was entitled to compensatory education for six hours for each school day which she attended from December 23, 2002 to the day the School District holds the IEP meeting ordered by the Hearing Officer. (Id.) The Appeals Panel ordered the School District to hold the IEP meeting within 30 days of the date of the its order (July 20, 2004) and ordered the School District to compensate Amanda's parents for the IEEs.

Amanda's parents subsequently filed this action, effectively appealing the decision of the Appeals Panel, pursuant to 20 U.S.C. § 1415, which permits a party "aggrieved by the findings and decision" of a state appeals panel to file suit in state or federal court. See 20 U.S.C. § 1415(i)(2)(A). They contend that the Appeals Panel erroneously applied the statute of limitations announced by the Commonwealth Court in Montour to restrict the award of compensatory education made to Amanda. The parties have filed cross motions for summary judgment addressing this limited

issue of law.

## II. LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is "material" if it might affect the outcome of the case under governing law. Id. "Where, as here, cross-motions for summary judgment have been presented, we must consider each party's motion individually. Each side bears the burden of establishing a lack of genuine issues of material fact." Reinert v. Giorgio Foods, Inc., 15 F. Supp. 2d 589, 593-94 (E.D. Pa. 1998). The parties agree that the material facts of this case are not in dispute. (Def.'s Mem. at 8.) Moreover, the narrow issue presently before the court, whether the "statute of limitations" announced in Montour applies to limit the award of compensatory education to Amanda, involves no issues of material fact which would otherwise require a trial. As the issue before the Court is solely an issue of law, summary judgment is appropriate in this case. See Chem. Bank v. Fed. Deposit Ins. Corp., No. Civ. A. 94-2799, 1996 WL 680137, at *1

(E.D. Pa. Nov. 19, 1996).

## III. DISCUSSION

The IDEA requires school districts to provide disabled children with "free appropriate education." See M.C. v. Cent. Reg'l Sch. Dist., 81 F.3d 389, 392 (3d Cir. 1996) (citing 20 U.S.C. § 1400(c)). A school district satisfies this standard when it provides the disabled student with an IEP which provides "significant learning" and confers "meaningful benefit." Ridgewood Bd. of Educ. v. N.E., 172 F.3d 238, 247 (3d Cir. 1999). In M.C., the United States Court of Appeals for the Third Circuit (the "Third Circuit") held that a disabled child who has not received an appropriate IEP is entitled to compensatory education:

> A school district that knows or should know that a child has an inappropriate [IEP] or is not receiving more than a *de minimis* educational benefit must, of course, correct the situation. We hold that, if it fails to do so, a disabled child is entitled to compensatory education for a period equal to the period of deprivation, excluding only the time reasonably required for the school district to rectify the problem.

M.C., 81 F.3d at 391-92. In Ridgewood, the Third Circuit explained that the entitlement to compensatory education is not restricted to disabled students who have IEPs, but "accrues when the school knows or should know that the student is receiving an inappropriate education." Ridgewood, 172 F.3d at 250.

The issue before the Commonwealth Court in Montour was whether time limitations should be applied to requests for compensatory

education made pursuant to the IDEA. Montour, 805 A.2d at 35. The Montour court looked to the opinion of the Third Circuit in Bernardsville Bd. of Educ. v. J.H., 42 F.3d 149 (3d Cir. 1994), to guide its decision. In Bernardsville, the Third Circuit examined whether a time limitation should be applied to a request made by the parents of a disabled child for retroactive reimbursement for their child's private school tuition after they unilaterally removed him from the public school because he did not receive a suitable IEP from his school district. Id. at 151. The Third Circuit determined that, since federal regulations do not provide a time limitation, the time limitation for reimbursement requests would depend upon equitable considerations. Id. at 157. The Third Circuit determined that parents could seek retroactive reimbursement of private school tuition if a due process proceeding supports their assertion that their child's IEP did not comply with the school district's obligation to provide their child with a free appropriate public education, but that the decision regarding the amount of reimbursement should reflect whether the parents gave the school district the opportunity to modify its IEP. Id. The Bernardsville court determined that:

> the right of review contains a corresponding parental duty to unequivocally place in issue the appropriateness of an IEP. This is accomplished through the initiation of review proceedings within a reasonable time of the unilateral placement for which reimbursement is sought. We think more than two years, indeed, more than one year, without mitigating

> excuse, is an unreasonable delay.

Bernardsville, 42 F.3d at 158.

The Commonwealth Court held in Montour that this limitations period should also apply to claims for compensatory education:

> We hold that the limitation period set forth in Bernardsville is applicable – generally, initiation of a request for a due process hearing must occur within one year, or two years at the outside (if the mitigating circumstances show that the equities in the case warrant such a delay), of the date upon which a parent accepts a proposed IEP. The equities in each case are determinative . . . .

Montour, 805 A.2d at 40. Consequently, the Commonwealth Court determined that, since S.T.'s parents did not request a due process hearing until January 17, 2001, the one year statute of limitations would preclude an award of compensatory education prior to January 17, 2000, unless there were mitigating circumstances which would excuse their delay in requesting a due process hearing, in which case an award of compensatory education including up to two years preceding the request for a due process hearing could be considered. Id.

The issue before this Court is whether the Montour time limitation on awards of compensatory education applies to Amanda's claim for compensatory education. The Montour decision, as a decision of a state court interpreting federal law, is not, of course, binding on this Court. See RAR Inc. v. Turner Diesel, Ltd., 107 F.3d 1272, 1276 (7th Cir. 1992) ("[F]ederal courts are

under no obligation to defer to state court interpretations of *federal* law . . . . Although state court precedent is binding upon us regarding issues of state law, it is only persuasive authority on matters of federal law.") (emphasis in original) (citations omitted); see also Grantham v. Avondale Indus., Inc., 964 F.2d 471, 473 (5th Cir. 1992) ("It is beyond cavil that we are not bound by a state court's interpretation of federal law regardless of whether our jurisdiction is based on diversity of citizenship or a federal question.") (citations omitted). Accordingly, this Court must decide whether Montour is consistent with the relevant decisions of the Third Circuit. See Murphy v. Fed. Deposit Ins. Corp., 208 F.3d 959, 964 (11th Cir. 2000) (noting that binding precedent for the federal courts is set only by the Supreme Court, "and for the district courts within a circuit, only by the court of appeals for that circuit").

As the Montour court relied on Bernardsville, this Court must examine whether the Third Circuit intended to apply the limitation on retroactive reimbursement of private school tuition announced in that case to compensatory education. As discussed above, Bernardsville requires that parents' claims for retroactive reimbursement of private school tuition be limited to adjust for excessive delay on the part of the parents in the initiation of review proceedings. Bernardsville, 42 F.3d at 157. In imposing this requirement, the Third Circuit considered the impact of the

parents' delay in seeking review of their disabled child's IEP on "the practical opportunity afforded the school district to modify its IEP or to determine definitively whether expenditures occurred outside the district could have been obviated by the filing of a prompt complaint." Id.

The Third Circuit has not, however, imposed on parents an obligation to seek prompt review of a disabled child's claim for compensatory education. Indeed, the Third Circuit has recognized that "a child's entitlement to special education should not depend upon the vigilance of the parents (who may not be sufficiently sophisticated to comprehend the problem)." M.C., 81 F.3d at 396. Moreover, in Ridgewood, the Third Circuit expressly rejected the Ridgewood Board of Education's argument that the failure of M.E.'s parents to object to his "programs and placements between 1988 and 1996" should bar his claim for compensatory education. Ridgewood, 172 F.3d at 250. The Third Circuit stated that, the failure of M.E.'s parents to "object to M.E.'s placement does not deprive him of the right to an appropriate education." Id. (citing M.C., 81 F.3d at 396). Indeed, in Ridgewood, the Third Circuit remanded to the district court to determine whether M.E. was entitled to an award of compensatory education for each of the school years from 1988-1997. Id. at 251.

This Court finds, therefore, that the Third Circuit did not intend that the time limitation on requests for retroactive

reimbursement of private school tuition announced in Bernardsville be applied to requests for compensatory education. See Kristi H. v. Tri-Valley Sch. Dist., 107 F. Supp. 2d 628, 633-34 (M.D. Pa. 2000) (determining that Bernardsville does not restrict a disabled child's entitlement to compensatory education); Jonathan T. v. Lackawanna Trail Sch. Dist., No. 3:03CV522, 2004 WL 384906, at * 2, (M.D. Pa. Feb. 26, 2004) ("Consistent with our opinion in Kristy H., [sic] we disagree with the school district's position that an equitable statute of limitations applies to Jonathan's claim for compensatory education. Instead, we follow Ridgewood, where the Third Circuit discussed whether a two year statute of limitations applied to claims for compensatory education and stated that the 'failure to object to [a student's] placement does not deprive him of the right to an appropriate education.' Here, we similarly conclude that Jonathan's claim to compensatory education should not be barred by the two year statute of limitations.") (quoting Ridgewood, 172 F.3d at 250). Accordingly, the Court holds that there is no limitations period, whether equitable or legal, on a disabled child's claim for compensatory education pursuant to the IDEA. The Court further holds that Montour does not apply to limit Amanda's entitlement to compensatory education. Indeed, imposing an equitable limitation on Amanda's claim for compensatory education for the years in which she did not receive a FAPE, but during which her parents chose to work with the School District

rather than request a due process hearing, would effectively punish her for her parents' lack of vigilance, a result expressly forbidden by both M.C. and Ridgewood. Plaintiffs' Motion for Summary Judgment is, therefore, granted and Defendant's Motion for Summary Judgment is denied.

An appropriate order follows.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **AMANDA A., ET AL.** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **THE COATESVILLE AREA SCHOOL DISTRICT** | : | **NO. 04-4184** |

**O R D E R**

**AND NOW**, this 23rd day of February, 2005, upon consideration of Defendant's Motion for Summary Judgment (Docket No. 5), Plaintiffs' Motion for Summary Judgment (Docket No. 8), the papers filed with respect thereto, and the argument held in open court on December 1, 2004, **IT IS HEREBY ORDERED** as follows:

1. Defendant's Motion for Summary Judgment is **DENIED.**
2. Plaintiffs' Motion is **GRANTED** on the issue of compensatory education, and this matter is **REMANDED** to the Commonwealth of Pennsylvania Special Education Due Process Appeals Review Panel to determine, consistent with this Memorandum and Order: 1) the entitlement, if any, of Amanda A. to compensatory education prior to December 23, 2002, and 2) the nature and amount of any such compensatory education award.
3. The Clerk of Court shall **CLOSE** this case statistically.

BY THE COURT:

_________________________
John R. Padova, J.